UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IVY BAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VERIZON COMMUNICATIONS INC., | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 07-1494 (ESH)

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Verizon Business Network Services Inc., improperly pled as Verizon Communications Inc., hereby moves to dismiss Plaintiff Ivy Bailey's Complaint.  Dismissal is required for several reasons:

*First*, Bailey signed a comprehensive release of any and all claims against her employer, and its successors, at the time she left her employment.  This release expressly encompasses all claims arising out of or related to her employment, including claims for discrimination (whether brought under federal or state law), and claims for wrongful discharge based on state or federal common law.  These are the very claims that Bailey has attempted to plead in her Complaint, and she has unequivocally released them as a matter of law.  Dismissal is therefore required.

*Second*, Bailey's discrimination claims are barred for several independent reasons.  To the extent that she alleges federal race and gender discrimination claims under Title VII of the Civil Rights Act ("Title VII"), her claim must be dismissed for three reasons.  One, she failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Two, the untimely charge that she did file alleges only age discrimination – not race or gender discrimination – and thus does not satisfy the necessary prerequisites for bringing a

race or gender discrimination claim.  Three, Bailey filed her complaint more than ninety days after receiving notice of her right to sue from the EEOC and therefore, even if her charge had been timely filed and alleged race or gender discrimination, her lawsuit is nonetheless untimely.

To the extent that Bailey alleges a state law discrimination claim under the District of Columbia Human Rights Act ("DCHRA"), it, too, is untimely.  Although the DCHRA does not require a plaintiff to file an administrative charge prior to bringing suit in court, it does require that such suits be brought within one year of the allegedly discriminatory conduct.  Bailey's employment with Defendant ended on or about February 1, 2006, and therefore she can only base her claims against the company on conduct occurring on or prior to that date.  But Bailey did not file her lawsuit until July 2007 – seventeen months after her employment ended.  Any state law discrimination claim therefore must be dismissed because it is untimely.

*Finally*, to the extent that Bailey claims that she was discharged for complaining about the hiring of a particular law firm to provide legal services to the company, such a claim does not fall within the District of Columbia's "very narrow" exception to the at-will employment doctrine for discharges that violate public policy.  Bailey has identified no D.C. policy, and we know of none, prohibiting a company from hiring its choice of counsel even if a relative of one of its executives happens to work for the law firm that is retained.  For this reason, too, her complaint must be dismissed.

For all of these reasons, Bailey's Complaint should be dismissed in its entirety with prejudice.  A memorandum of law in support of this Motion is filed herewith.

DATED this 27th day of August, 2007.

Respectfully submitted,


_____/s/ Jacqueline M. Holmes_____
Jacqueline M. Holmes (Bar No. 450357)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Willis J. Goldsmith (Bar No. 945956)
JONES DAY
222 East 41st Street
New York, New York 10017-6702
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

ATTORNEYS FOR DEFENDANT VERIZON
BUSINESS NETWORK SERVICES INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IVY BAILEY,                              )
                                         )
          Plaintiff,                     )        Civil Action No. 07-1494 (ESH)
                                         )
v.                                       )
                                         )
VERIZON COMMUNICATIONS INC.,             )
                                         )
          Defendant.                     )
                                         )

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

This Court should dismiss Plaintiff Ivy Bailey's ("Bailey") Complaint against Defendant Verizon Business Network Services Inc. (improperly pled as Verizon Communications Inc.) ("Verizon Business") pursuant to Federal Rule of Civil Procedure 12(b)(6) for several compelling reasons.

*First*, Bailey signed a comprehensive release of any and all claims against her employer, and its successors, at the time she left her employment. This release expressly encompasses all claims arising out of or related to her employment, including claims for discrimination (whether brought under federal or state law), and claims for wrongful discharge based on state or federal common law. These are the very claims that Bailey has attempted to plead in her Complaint, and she has unequivocally released them as a matter of law. Dismissal is therefore required.

*Second*, Bailey's discrimination claims are barred for several independent reasons. To the extent that she alleges federal race and gender discrimination claims under Title VII of the Civil Rights Act ("Title VII"), her claim must be dismissed for

three reasons.  One, she failed to file a timely charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC").  Two, the untimely charge that she did

file alleges only age discrimination – not race or gender discrimination – and thus does

not satisfy the necessary prerequisites for bringing a race or gender discrimination claim.

Three, Bailey filed her complaint more than ninety days after receiving notice of her right

to sue from the EEOC and therefore, even if her charge had been timely filed and alleged

race or gender discrimination, her lawsuit is nonetheless untimely.

To the extent that Bailey alleges a state law discrimination claim under the

District of Columbia Human Rights Act ("DCHRA"), it, too, is untimely.  Although the

DCHRA does not require a plaintiff to file an administrative charge prior to bringing suit

in court, it does require that such suits be brought within one year of the allegedly

discriminatory conduct.  Bailey's employment with Defendant ended on or about

February 1, 2006, and therefore she can only base her claims against the company on

conduct occurring on or prior to that date.  But Bailey did not file her lawsuit until July

2007 – seventeen months after her employment ended.  Any state law discrimination

claim therefore must be dismissed because it is untimely.

*Finally*, to the extent that Bailey claims that she was discharged for complaining

about the hiring of a particular law firm to provide legal services to the company, such a

claim does not fall within the District of Columbia's "very narrow" exception to the at-

will employment doctrine for discharges that violate public policy.  Bailey has identified

no D.C. policy, and we know of none, prohibiting a company from hiring its choice of

counsel even if a relative of one of its executives happens to work for the law firm that is

retained.  For this reason, too, her complaint must be dismissed.

## STATEMENT OF FACTS

As alleged in the Complaint and related documents, and taken as true for purposes of this Motion only (*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), the facts are as follows:

A.    Plaintiff's Employment With Verizon Business

1.    Plaintiff Ivy Bailey, a citizen of the State of Pennsylvania, was employed by Defendant Verizon Business Network Services Inc.'s predecessor companies (hereinafter referred to as "Verizon Business")[1] as an Executive Secretary/Administrative Assistant in its Law and Public Policy department from approximately November 13, 2000 through approximately February 1, 2006.  Compl. ¶¶ 1, 3; *see also* Holmes Decl., Ex. 1 (Separation Agreement and Release); Holmes Decl., Ex. 2 (EEOC Charge).[2]

2.    Early in her employment, Plaintiff worked for and reported directly to Harvey Rumeld, Chief of the Employment Law Section for Verizon Business.  Compl. ¶ 4.  She later began to work for several other attorneys in the Law and Public Policy Department, one of whom was Kathleen Tremblay.  Compl. ¶ 11.

B.    The Creation of the Ethics Department, and the Contract With Proskauer Rose

3.    At some point prior to 2006, Verizon Business created an Ethics Department, and trained its employees in ethics-related issues.  Compl. ¶ 5.

---

[1] At the start of Bailey's employment in 2000, the entity now known as Verizon Business Network Services Inc. was known as MCI WorldCom Management Company.  Decl. of Russell G. Wood, ¶ 4.  In December 2004, MCI WorldCom Management Company merged with, and became known as, MCI WorldCom Network Services Inc.; in June 2005, it became known as MCI Network Services Inc.  *Id.*  In April 2006 MCI Network Services Inc. became known as Verizon Business Network Services Inc.  *Id.*  For simplicity, we refer to this entity as "Verizon Business" or the "Company" throughout, regardless of the time period being discussed.

[2] In deciding a Motion to Dismiss under Rule 12(b)(6), the Court can consider Plaintiff's EEOC charge, and documents referenced therein, without converting the motion into a motion for summary judgment.  *Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 n.5 (N.D. Ill. 1994).

4.     While Plaintiff was employed by Verizon Business, the company's Law and Public Policy department entered into a contract with Proskauer Rose, LLP for the Firm to provide the company with legal services in the field of international employment law. Compl. ¶ 6. At the time this contract was signed, Mr. Rumeld's brother was a partner as Proskauer Rose. *Id.* ¶ 9. Mr. Rumeld, in his capacity as Chief of the Employment Law Section, signed the agreement between Verizon Business and Proskauer Rose. *Id.* ¶ 7.

5.     At some point after the agreement with Proskauer was finalized, Plaintiff heard Kathleen Tremblay, one of the attorneys for whom she worked, complain about the billing practices of Proskauer Rose. Compl. ¶ 13. In particular, Plaintiff heard Tremblay say that Proskauer had billed more than necessary for services performed, and had performed services that had not been requested. *Id.*

6.     In November 2005, Plaintiff filed an Ethics Complaint with Nancy Higgins, the company's Executive Vice President for Ethics. Compl. ¶ 18; *see also* Holmes Decl., Ex. 2 (EEOC Charge). This Complaint alleged that Mr. Rumeld had improperly hired Proskauer Rose to perform legal services for the company. Compl. ¶¶ 7-10. Plaintiff has never been informed of the results of any investigation of her complaint. *Id.* ¶ 19.

C.     Plaintiff's Hostile Work Environment Claim

7.     During her employment with Verizon Business, Plaintiff alleges that she was subject to unspecified comments that she claims created a hostile work environment based on her race and her gender. Compl. ¶ 16. She alleges that she "expressed her

concerns" about her treatment to Mr. Rumeld, and that he did nothing to correct it. Compl. ¶ 17.

D.     The Separation Agreement and Release

8.     On approximately February 1, 2006, Plaintiff's employment with Verizon Business ended, and she was offered a severance package in exchange for signing a separation agreement and release. *See* Holmes Decl., Ex. 2 (EEOC Charge). On February 10, 2006, Plaintiff signed the release, and subsequently received her severance package. *Id.*; *see also* Holmes Decl., Ex. 1 (Separation Agreement and Release). The release applies to MCI, LLC "and its predecessors, successors, parents, subsidiaries, affiliates, [and] assigns," and broadly releases "any and all claims . . . which arise out of, concern or relate in any way to Employee's employment with the Company . . ." including discrimination claims and "any and all claims arising under federal, state, local, or foreign laws, statutes, regulations, or ordinances, as well as any common law legal or equitable claims." Holmes Decl., Ex. 1 (Separation Agreement and Release), ¶ d.

E.     Plaintiff's EEOC Charge

9.     On December 18, 2006, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. *See* Holmes Decl., Ex. 2 (EEOC Charge). The charge alleged that Verizon Business created a hostile work environment based upon her age. *Id.* It did not make any allegations about race or gender, or check the race and gender boxes. *Id.*

10.     On February 23, 2007, after a two-month investigation, the EEOC dismissed the Plaintiff's charge because it lacked probable cause. *See* Holmes Decl., Ex. 3 (Dismissal and Notice of Right to Sue Letter).

F.    Procedural History

11.    Five months later, on July 19, 2007, Plaintiff filed her Complaint in the

Superior Court for the District of Columbia, alleging that while she was employed by

Verizon Business, she experienced a hostile work environment based on her race and her

gender.  Compl. ¶¶ 16-18.  She further alleges that these actions were taken in an effort to

"force[] her resignation."  *Id.* ¶ 16.  Finally, she alleges that she made an ethics complaint

while employed by Verizon Business, and that its ethics department is ineffective.  *Id.* ¶¶

18-19.  The Complaint pleads damages of $1,000,000.00.

12.    On August 20, 2007, Defendant Verizon Business Network Services Inc.,

a corporation incorporated in Delaware and with its principal place of business in

Virginia, removed this case to the United States District Court for the District of

Columbia based upon diversity of citizenship.  *See* Notice of Removal, filed August 20,

2007.

13.    Consistent with the time limits specified by Federal Rule of Civil

Procedure 81(c), this Motion followed.

## ARGUMENT

## I.    STANDARD FOR DISMISSAL

Dismissal under Rule 12(b)(6) is appropriate where "it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  When reviewing such a motion,

the court may consider "the facts alleged in the complaint, any documents . . . attached to

or incorporated in the complaint and matters of which . . . judicial notice [may be taken]."

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25, *aff'd*, 254 F.3d 315

(D.C. Cir. 2000) (footnote and citation omitted). Furthermore, "the court need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citation omitted).

These standards require dismissal here. Assuming that the facts alleged in Plaintiff's Complaint are true, her complaint does not state a claim upon which this court may grant relief for three reasons. First, she has signed a valid release giving up all of her claims against the company that relate to or arise out of her employment. Second, her claims that she was discriminated against and subjected to a hostile work environment based upon her race and her gender are time-barred, whether brought under federal or state law. Any federal discrimination claim is barred on the separate ground that Plaintiff failed to exhaust her administrative remedies. And finally, to the extent that Plaintiff is attempting to plead a cause of action for wrongful discharge based upon her filing of an internal ethics complaint, such a claim does not fall within the District of Columbia's "very narrow" exception to the at-will employment doctrine for discharges that violate public policy.

For each of these reasons, Bailey's complaint must be dismissed in its entirety.

## II. PLAINTIFF HAS RELEASED ALL POTENTIAL CLAIMS AGAINST VERIZON BUSINESS RELATED TO HER EMPLOYMENT

As noted above, Plaintiff signed a release of claims in exchange for a severance package when her employment with Verizon Business terminated in February 2006.

That release, which is governed by Delaware law,[3] is enforceable, and explicitly relinquishes all of the claims that she purports to have plead in her complaint. For this reason, Bailey's claims in this action must be dismissed.

    A.    <u>The Release Satisfies the Criteria for Enforceability Under Delaware Law</u>

"Delaware has a long history of recognizing the validity of general releases." *Fox v. Rodel, Inc.*, No. 98-531, 1999 WL 588293, at *8 (D. Del. July 14, 1999), citing *Nottingham Partners v. Dana*, 564 A.2d 1089, 1105 (Del. 1989); *Adams v. Jankouskas*, 452 A.2d 148, 155-56 (Del. 1982). "Under Delaware law, a release is valid and binding when there has been a meeting of the minds of the parties, when the release is supported by consideration, and when there has been no fraud, misrepresentation, mistake, duress, or undue influence." *Fox*, 1999 WL 588293, at *8; *see also Delaware Lumber & Millwork, Inc. v. Anecon Constr. Co.*, No. 93L-06-011, 1996 WL 280781, at *2 (Del. Super. Ct. April 19, 1996). These requirements are easily satisfied here.

*First*, the release itself establishes a meeting of the minds. Its language plainly and unequivocally releases "any and all claims . . . which Employee may have which arise out of, concern or relate in any way to Employee's employment with the Company." Holmes Decl., Ex. 1 (Separation Agreement and Release), ¶ d. And by signing it, Bailey expressly acknowledged that she "fully under[stood] the meaning and intent" of the release. *Id.*, ¶ m. Thus, there can be no question that Bailey knew and understood that by signing the release and accepting its benefits, she was relinquishing any claims related to her employment.

---

[3] The release provides that it "shall, in all respects, be interpreted, enforced, and governed under the laws of the State of Delaware, without regard to its conflict-of-law provisions." Holmes Decl., Ex. 1 (Separation Agreement and Release), ¶ l.

*Second*, the release is supported by consideration. Specifically, Bailey received severance payments in the form of salary continuation for a number of weeks after her separation from employment. *Id.*, ¶ a. She also received continued medical, dental, and vision coverage, for which Verizon Business continued to make its portion of the premium payments for a number of weeks. *Id.*, ¶ b. Absent the parties' Separation Agreement, Bailey would not otherwise have been entitled to continued salary payments, or continued company contributions to insurance coverage, upon her separation from employment. Therefore these payments provide consideration for her release of claims against the company.

*Finally*, there is no evidence of mistake, fraud, or duress in the execution of the release. Indeed, Bailey specifically acknowledged otherwise in the release, affirming that she "had sufficient time to consider [the release] and consult with counsel of []her own choosing" regarding it, and that she "voluntarily execut[ed] [the release] without duress." *Id.*, ¶ m. Moreover, when she filed her EEOC charge ten months later, Bailey did not reference any alleged mistake, fraud, or duress in connection with her acceptance of the severance package and execution of the release, even though she acknowledged that she had accepted the severance package in her charge. *See* Holmes Decl., Ex. 2 (EEOC Charge).

In sum, the Separation Agreement and Release satisfies all of the requirements for enforcing a release under Delaware law, and this Court should therefore enforce it.

B.    The Release Explicitly Relinquishes Bailey's Claims in this Lawsuit

In Delaware, a release is a contract, and "[c]onstruction of contract language is a question of law." *Fox*, 1999 WL 588293, at *6 (construing release as a contract under

Delaware law); *see also Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991).

Here, the language of the release is clear and unequivocal (Holmes Decl., Ex. 1

(Separation Agreement and Release), ¶ d):

> Employee agrees to release and forever discharge the
> Company, and its predecessors, successors, parents,
> subsidiaries, affiliates, [and] assigns . . . from any and all
> claims, demands, attorneys' fees, damages or liability of
> any nature whatsoever, known or unknown, which
> Employee may have which arise out of, concern or relate in
> any way to Employee's employment with the Company . . .
> including without limitation . . . claims for discrimination
> and/or retaliation, claims for wrongful termination . . .

This language explicitly releases Bailey's "claims for discrimination and/or retaliation,"

(Compl. ¶¶ 16-18) as well as any "claim[] for wrongful termination" that she may have

plead against the Company.[4]  Compl. ¶¶ 18-19.  Since she has unequivocally released

these claims, and any "damages or liability of any nature whatsoever" in connection with

them, she can recover nothing in this suit, and her Complaint must therefore be

dismissed.

### III.    PLAINTIFF'S DISCRIMINATION CLAIMS MUST BE DISMISSED BECAUSE THEY ARE TIME BARRED, AND BECAUSE SHE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS TO THOSE CLAIMS

In her Complaint, Plaintiff alleges that she was discriminated against based on her

race and gender during her employment with Verizon Business – i.e., on or at some point

prior to February 1, 2006.  It is unclear whether these claims are brought under state or

federal law, but either way they must be dismissed.  Under federal law, Plaintiff failed to

bring a timely charge with the EEOC, and failed to allege in the untimely charge that she

---

[4] The release defines "Company" as "MCI, LLC and its subsidiaries and affiliates."  Holmes Decl., Ex. 1 (Separation Agreement and Release), introductory paragraph.  The release itself applies more broadly, to "the Company [as defined in the release] and its predecessors, successors, parents, subsidiaries, affiliates, [and] assigns."  *Id.*, ¶ d.  MCI, LLC is now known as Verizon Business Global, LLC; it is the parent company of Verizon Business Network Services Inc.  Wood Decl., ¶ 5.  Thus, Verizon Business is a subsidiary of MCI, LLC, and falls squarely within the release's definition of "Company."

did file that Verizon Business discriminated against her on the basis of race or gender. Plaintiff has thus failed to exhaust her administrative remedies, which deprives the Court of jurisdiction over any federal discrimination claim.  And even if her charge were timely, and alleged the same cause of action alleged in her Complaint, any federal discrimination claim is nonetheless untimely because she failed to bring her suit within ninety (90) days after receiving notice of her right to sue in February 2007.

Any state law discrimination claim under the District of Columbia Human Rights Act ("DCHRA") must also be dismissed.  Although there is no requirement that a plaintiff exhaust administrative remedies under the DCHRA, a one-year statute of limitations applies to claims brought in court.  Since Plaintiff filed her claim more than one year after she left Verizon Business's employment, and thus more than one year after any allegedly discriminatory acts occurred, any claim under the DCHRA is also untimely.

A.    Any Federal Discrimination Claim Must be Dismissed Because It is Untimely, and Because Plaintiff Failed to Exhaust Her Administrative Remedies

1.    Plaintiff Failed to Timely File an EEOC Charge

"Because the District of Columbia has its own Human Rights Commission that accepts and investigates charges of employment discrimination, the statute of limitations for filing a charge alleging a violation of Title VII in D.C. is 300 days."  *Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 158 (D.D.C. 2004) (Collyer, J.), citing 42 U.S.C. § 2000e-5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002).  This timely charge filing requirement is not merely an arbitrary technicality. *See, e.g., Del. State Coll. v. Ricks,* 449 U.S. 250, 259-60 (1980).  To the contrary, the

Supreme Court has admonished that these "time-limitations provisions themselves promote[] important interests[,]" and that

> the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.

*Id.* (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463-64 (1975)).

Here, Plaintiff filed her only EEOC charge on December 18, 2006 – approximately 320 days after her employment with Verizon Business ended on February 1, 2006. *See* Holmes Decl., Ex. 2 (EEOC Charge); Ex. 1 (Separation Agreement and Release) noting that separation from employment is effective February 1, 2006. Her charge is therefore untimely, and any Title VII claim must be dismissed on this basis alone. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2166-67 (2007) (noting that an employee must file an EEOC charge within 300 days "after the alleged unlawful employment practice occurred, . . . and if the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court" (internal quotation marks and citation omitted)); *Coleman*, 310 F. Supp. 2d at 160 (dismissing all "Title VII claims arising from acts that occurred more than 300-days prior to [plaintiff's] July 16, 2002 [EEOC Charge]").

      2.    The EEOC Charge that Plaintiff Did File Does Not Allege Race and Gender Discrimination, the Only Claims Pled in Her Complaint

"Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). Any lawsuit following the filing of an EEOC

charge "is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (citation omitted).[5]

Plaintiff's EEOC charge claims only that she experienced a hostile work environment, and unspecified retaliation, based on her age in violation of the Age Discrimination in Employment Act:

> I began my employment with the above named Respondent on November 13, 2000, and held the position of Executive Administrative Assistant in the Employment Law Section. In November 2005, I sent a letter to Respondent's Executive Vice President Nancy Higgins in the Ethics department complaining of a hostile work environment that had been created. I met with Vice President of Employment Law, twice, nothing was resolved. On February 1, 2006, I was informed that I was terminated and requested to sign a severance plan. On or about February 10, 2006, I accepted Respondent's severance plan.
>
> *I believe that I was discriminated against because of my age, 55 years, and subjected to retaliation, in violation of the Age Discrimination Act in Employment of 1967, as amended.*

Holmes Decl., Ex. 2 (EEOC Charge) (emphasis added).

The charge does not mention any Title VII claim at all, much less discrimination on the basis of race or gender – the only claims alleged in the Complaint. *See* Compl. ¶¶ 16-18. Plaintiff did not even check the boxes on her EEOC charge for "Race" or "Sex" discrimination; the only box she checked was "Age." *See* Holmes Decl., Ex. 2 (EEOC Charge). Plaintiff's sole basis for her charge was her age, and therefore she did

---

[5] Federal Rule of Civil Procedure 12(b)(1) "is appropriate for resolving cases in which the plaintiff has failed to exhaust administrative remedies." *Jeffers v. Chao*, No. Civ.A. 03-1762, 2004 WL 3257069, at *3 (D.D.C. Sept. 21, 2004) (Collyer, J.) (citation omitted), *reconsideration denied*, No. Civ.A. 03-1762, 2005 WL 1432374 (D.D.C. June 14, 2005). Importantly, this shifts the burden to plaintiff to "prov[e] by a preponderance of the evidence that a court has subject matter jurisdiction to hear a case." *Wilbur v. CIA.*, 273 F. Supp. 2d 119, 122 (D.D.C. 2003) (citation omitted), *aff'd*, 335 F.3d 675 (D.C. Cir. 2004).

not exhaust his administrative remedies as Title VII requires.  *See, e.g.*, *Brown v. District of Columbia*, 251 F. Supp. 2d 152, 162 (D.D.C. 2003) (holding that plaintiff failed to exhaust her administrative remedies regarding her gender discrimination and retaliation claims where, in her "EEOC complaint, plaintiff checked only the boxes for allegations of discrimination based on race and disability, and did not check the boxes for gender discrimination or retaliation."); *Hunt v. D.C. Dep't of Corrections*, 41 F. Supp. 2d 31, 36 (D.D.C. 1999) (holding that plaintiff failed to exhaust her administrative remedies regarding her gender discrimination claim where, in her EEOC charge, plaintiff "specifically checked the boxes for age discrimination and retaliation, but she did not check the box for gender discrimination."); *Sisay v. Greyhound Lines, Inc.*, 34 F. Supp. 2d 59, 64 (D.D.C. 1998) (holding that plaintiff failed to exhaust his claim of discrimination based on his national origin where he "alleged only race discrimination and retaliation in his EEOC charge.  Absent from that complaint is any indication of a claim of national origin discrimination either in the form of express words or factual allegations that would support such a claim.").  Plaintiff's Title VII claim should therefore be dismissed.

    3.  Plaintiff Failed to File Suit Within Ninety Days of Receiving Her Right to Sue Letter

   Even if the Court were to find that Plaintiff's race and gender discrimination claims were properly asserted in her EEOC Charge, these claims should nonetheless be dismissed because they are untimely.  Plaintiff was required to file any Title VII claim within ninety (90) days of her receipt of her right-to-sue notice.  42 U.S.C. § 2000e-5(f)(1) (2000); *see also Taye v. Amundson*, 908 F. Supp. 21, 23 (D.D.C. 1995) ("It is a clear requirement of Title VII that a private suit to enforce a claim arising under Title VII

must be filed within 90 days of receipt of the right-to-sue letter.") (*citing* 42 U.S.C. §
2000e-5(f)(1)). Moreover, "[t]he presumed date of a party's receipt of a right-to-sue
letter from the EEOC is three days after issuance." *Coleman*, 310 F. Supp. 2d at 158,
*citing Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1, *reh'g denid*, 467
U.S. 1231 (1984).

      Here, the EEOC issued a right-to-sue letter on February 23, 2007. Holmes Decl.,
Ex. 3 (Dismissal and Notice of Right to Sue Letter). Plaintiff is therefore presumed to
have received the letter no later than the end of February. The letter plainly and
specifically advises Plaintiff that she must file any lawsuit "**WITHIN 90 DAYS**" of
receipt. *Id.* (emphasis in original). She did not do so. Instead, she waited nearly five
months after she received the letter, until July 19, 2007, to file her complaint. Since she
failed to file her complaint on time, it must be dismissed. *See Coleman*, 310 F. Supp. 2d
at 158 ("A charging party must file a court complaint *within 90 days of receipt of the
right-to-sue letter from the EEOC* or the party's right to sue will be lost.") (*citing* 42
U.S.C. § 2000e-5(f)(1)) (emphasis added); *Powell v. Wash. Metro. Area Transit Auth.*,
238 F. Supp. 2d 160, 163 n.4 (D.D.C. 2002) (The "90-day period . . . begins to run . . .
upon a plaintiff's receipt of a right-to-sue notice . . . ." (emphasis omitted)); *Smith v.
Dalton*, 971 F. Supp. 1, 2 (D.D.C. 1997) (holding that plaintiff's Title VII complaint was
untimely because it was filed "91 days after he received the EEOC's final decision");
*Hunt,* 41 F. Supp. 2d at 37 (noting that plaintiff's action was untimely because the
complaint was not filed for ninety-four days after the right-to-sue letter was issued).

      In sum, Plaintiff's federal discrimination claim fails at every turn: she did not file
a timely discrimination charge; she did not include the claims she has now tried to bring

in the untimely charge she filed; and she did not file her Complaint on time. For all of these reasons, any Title VII claim must be dismissed.

> B.    Any Claim Under the DCHRA Is Untimely

To the extent that Plaintiff has brought a discrimination claim under state law – specifically, the District of Columbia Human Rights Act ("DCHRA") – that claim, too, is untimely. Unlike Title VII, the DCHRA does not require a discrimination plaintiff to exhaust administrative remedies. Instead, it permits a plaintiff to choose between filing a charge with the agency, or filing a suit in court. However, any such suit must be filed within one year of the allegedly discriminatory events. D.C. Code Ann. § 2-1403.16(a); *Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 503 (D.C. 2002). Thus, courts routinely dismiss discrimination complaints filed outside this one-year period as untimely. *See Coleman*, 310 F. Supp. 2d at 160; *Boulton*, 808 A.2d at 503.

Here, Plaintiff first filed her Complaint in the Superior Court for the District of Columbia on July 19, 2007 – a full seventeen months after her employment with Verizon Business ended on February 1, 2006. *See* Holmes Decl., Ex. 1 (Separation Agreement and Release) specifying separation date. The Complaint is therefore untimely under the DCHRA, and it must be dismissed.

**IV.    TO THE EXTENT THAT PLAINTIFF HAS PLED A CLAIM FOR WRONGFUL DISCHARGE BASED ON THE FILING OF AN ETHICS COMPLAINT, IT MUST BE DISMISSED**

It is not clear from her Complaint whether Plaintiff intends to allege that she was wrongfully terminated, or otherwise adversely impacted, in retaliation for filing an ethics complaint with Verizon Business's ethics department. To the extent she does bring such

a claim, however, it must be dismissed, as her conduct does not fall within any exception

to the District of Columbia's general rule that employment relationships are at-will.

In general, employment relationships for an unspecified term of employment are

considered "at will" in the District of Columbia, and may be terminated by either party at

any time, with or without cause and with or without notice. *Adams v. George W.*

*Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991). Although the D.C. courts have recognized

an exception to this general rule for discharges that are alleged to violate public policy,

the exception is "a very narrow" one, generally applicable where "the sole reason for the

discharge is the employee's refusal to violate the law, as expressed in a statute or

municipal regulation," (*id.*, 597 A.2d at 33-34), or where there is "a clear showing, based

on some identifiable policy that has been 'officially declared' in a statute or municipal

regulation, or in the Constitution" that an exception to the general at-will employment

rule is required. *Carl v. Children's Hosp.*, 702 A.2d 159, 164 (D.C. 1997) (footnote and

citation omitted). Thus, the D.C. courts have held that public policy claims may survive

a motion to dismiss only where they allege a "discharge[] in violation of a mandate

explicitly set forth in District law . . . ." *Freas v. Archer Servs.*, 716 A.2d 998, 1002

(D.C. 1998).

Here, Plaintiff has not pointed to any statute or D.C. municipal regulation

expressing a policy relevant here. She has pointed to no statute or regulation, and we

know of none, suggesting that it is the District's policy to prevent corporations from

hiring law firms that employ relatives of their employees.[6] And she has pointed to no

---

[6] Indeed, even in states that recognize broader public-policy based wrongful discharge claims than D.C., claims based on similar allegations are generally unsuccessful. *See, e.g.*, *Bumbaca v. Twp. of Edison*, 861 A.2d 156, 165 (N.J. Super. Ct. App. Div. 2004) (dismissing failure to promote claim based on public policy because "New Jersey has no public policy prohibiting nepotism.").

D.C. statute or regulation suggesting a policy protecting the filing of internal complaints about the hiring of a particular law firm to provide a company with legal services. Absent such a showing, any wrongful discharge claim is invalid as a matter of law, and must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Verizon Business Network Services Inc. respectfully requests that Plaintiff's Complaint be dismissed in its entirety, and that judgment be entered in Defendant's favor.

DATED this 27th day of August, 2007.

Respectfully submitted,

_____/s/ Jacqueline M. Holmes_____
Jacqueline M. Holmes (Bar No. 450357)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Willis J. Goldsmith (Bar No. 945956)
JONES DAY
222 East 41st Street
New York, New York 10017-6702
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

ATTORNEYS FOR DEFENDANT
VERIZON BUSINESS NETWORK
SERVICES INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2007, I caused  true and correct copies of the foregoing Defendant's Motion to Dismiss the Complaint, Memorandum of Law in Support of its Motion to Dismiss the Complaint with attached exhibits and declarations, and Proposed Order to be served by first class mail, postage prepaid, upon:

> Ivy G. Bailey
> 1774 Manor Road
> Windsor, Pennsylvania 17366-9108

_____/s/ Jacqueline M. Holmes_____
Jacqueline M. Holmes

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IVY BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-1494 (ESH) |
| | ) | |
| v. | ) | |
| | ) | |
| VERIZON COMMUNICATIONS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF RUSSELL G. WOOD, JR.

I, Russell G. Wood, Jr. declare as follows:

1.  I am over 18 years of age.

2.  I make this declaration based upon personal knowledge. If called to testify, I could testify competently to the facts in this declaration.

3.  I have been employed as an Assistant General Counsel in the Legal Department of Verizon Business since July 16, 2007, and was appointed Assistant Secretary of Verizon Business Network Services Inc. and certain other subsidiaries of Verizon Business on July 25, 2007. In my present capacity I am familiar with the facts set forth herein.

4.  WorldCom Management Company was incorporated in October 1997. In December 1998, WorldCom Management Company changed its name to MCI WorldCom Management Company. In December 2004, MCI WorldCom Management Company merged into MCI WorldCom Network Services, Inc., and the resulting company was known as MCI WorldCom Network Services, Inc. In June 2005, MCI WorldCom Network Services, Inc. became known as MCI Network Services, Inc. In April, 2006, MCI Network Services, Inc. became known as Verizon Business Network Services Inc. Verizon Business Network Services

Inc. is a direct, wholly-owned subsidiary of MCI Communications Corporation . In turn, MCI

Communications Corporation is a direct, wholly-owned subsidiary of Verizon Business Global

LLC.

     5.     In January 2006, MCI, Inc., the parent company of MCI Network Services,

Inc.(now known as Verizon Business Network Services Inc.), merged into ELI Acquisition,

LLC, a wholly-owned subsidiary of Verizon Communications Inc. Thereafter, in January 2006,

ELI Acquisition, LLC became known as MCI, LLC. In November 2006, MCI, LLC changed its

name to Verizon Business Global LLC.

     I have read the foregoing Declaration and declare under penalty of perjury that it is true

and correct.

     Executed this 24th day of August 2007.


Russell G. Wood, Jr.

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IVY BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-1494 (ESH) |
| | ) | |
| v. | ) | |
| | ) | |
| VERIZON COMMUNICATIONS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>DECLARATION OF JACQUELINE M. HOLMES</u>

JACQUELINE M. HOLMES, an attorney admitted to practice before this Court, affirms the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am an attorney in the law firm Jones Day, counsel for the Defendant in this matter, Verizon Business Network Services Inc. (improperly pled as Verizon Communications Inc.) ("Verizon Business").

2.      I submit this Declaration to put before this Court true and correct copies of the following documents, each of which is annexed.

| <u>Exhibit</u> | <u>Document</u> |
|---|---|
| 1. | Separation Agreement and Release; |
| 2. | December 16, 2006 EEOC Charge filed by Ivy Bailey; |
| 3. | Dismissal and Notice of Right to Sue Letter. |

I have read the foregoing Declaration and declare under penalty of perjury that it is true and correct.

Dated: August 27, 2007

_____ /s/ Jacqueline M. Holmes _____
Jacqueline M. Holmes

# EXHIBIT 1

## GENERAL RELEASE AGREEMENT

This General Release Agreement (the "Agreement") is made between MCI, LLC, and its subsidiaries and affiliates (collectively "MCI, LLC " or the "Company") and Ivy G Bailey on behalf of himself/herself and his/her heirs, assigns, transferees, representatives, principals, agents, executors, administrators, successors in interest and attorneys (hereinafter collectively referred to as "Employee")  The signatories to this Agreement will be referred to collectively as the "Parties "

In consideration of the mutual promises set forth herein and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows

    a  Employee's employment will terminate effective 02/01/2006  The Company agrees to pay Employee severance pay in accordance with the MCI Severance Plan (the "Severance Plan") in the amount of $6,658 97 (less applicable withholdings and deductions) payable in bi-weekly installments commencing on the first practicable regular payday following the Company's receipt of Employee's executed Agreement and after Agreement becomes effective in accordance with paragraph g

    b  If Employee is currently enrolled in the group medical, dental, vision or HCRA plans, the Company further agrees to provide Employee with continued coverage under COBRA at the Employee contribution rate for the period of time indicated on the enclosed Severance Worksheet, after which time Employee may elect to continue COBRA benefits by paying both Employee and Employer contribution rates  The Employee contribution for medical, dental, and vision coverage will be deducted from Employee's bi-weekly severance payments except for the final severance payment

    c  In addition to the above severance payment, the Company  will pay Employee all earned, unused vacation

    d  Employee agrees to release and forever discharge the Company, and its predecessors, successors, parents, subsidiaries, affiliates, assigns, and present and former directors, officers, employees, agents, shareholders and representatives, from any and all claims, demands, attorneys' fees, damages or liability of any nature whatsoever, known or unknown, which Employee may have which arise out of, concern or relate in any way to Employee's employment with the Company or its predecessors, including without limitation, any and all claims for severance and/or termination pay, claims for salary, wages, vacation pay, or compensation of any kind, including but not limited to bonuses and commissions, claims for discrimination and/or retaliation, claims for wrongful termination, claims for disability or workers' compensation, claims for benefits and fringe benefits of any kind, claims based on violation of public policy, claims for reimbursement of travel and/or business expenses, claims for breach of contract including breach of the covenant of good faith and fair dealing, claims under the Fair Labor Standards Act, 29 U S C §§ 201, et seq , Title VII of the Civil Rights Act of 1964, as amended, 42 U S C §§ 2000e et seq , the Age Discrimination In Employment Act ("ADEA"), 29 U S C § 621 et seq , the Americans With Disabilities Act, 42 U S C §§ 12101 et seq , the Family and Medical Leave Act, 29 U S C §§ 2601, et seq , or the Employee Retirement Income Security Act, 29 U S C §§ 1001 et seq, and any and all claims arising under any other federal, state, local or foreign laws, statutes, regulations, or ordinances, as well as any and all common law legal or equitable claims  Employee further agrees to refrain from bringing, prosecuting or arbitrating any claim, demand or cause of action, either at law or in equity, against the Company as the result of any act or omission by the Company occurring up to and including the date of Employee's execution of this Agreement  Nothing in this Agreement alters Employee's right to file a charge with an administrative agency to the extent that is a right which as a matter of law cannot be waived  Employee waives any remedy or recovery in any action which may be brought on his/her behalf by any government agency or other person relating to Employee's employment or termination of such employment.

    e  Employee agrees to return to the Company all Company documents (and all copies thereof) and other Company property which Employee has had in his/her possession at any time, including but not limited to, Company files notes, drawings, records, business plans and forecasts, financial information, specifications, computer-recorded information, computers and other tangible property, credit cards, identification badges, entry cards, keys, and materials of any kind which contain or embody any proprietary or confidential information of the Company

RECEIVED FEB 1 4 2006

f  In accordance with MCI's Severance Plan Employee agrees that if he/she is rehired by the Company during the period represented by his/her severance pay benefit, he/she will repay the portion of the severance pay benefit that corresponds to the period from his/her rehire date to the end of the period represented by the severance pay benefit  Employee further authorizes the Company to deduct from Employee's wages/compensation any amounts owed pursuant to this Paragraph

g  The Company agrees that Employee may, if desired, have a period of forty-five (45) days from his/her termination date to consider, execute and return this Agreement  If the executed Agreement is not received by the Company within forty-five days (45) days of Employee's termination date, the Agreement will be considered null and void  Employee is advised to consult with an attorney (without expense to the Company) concerning release of claims under th ADEA prior to executing this Agreement  Employee may revoke this Agreement within seven (7) calendar days following Employee's execution of the Agreement (the "Revocation Period")  If Employee does not revoke the Agreement during the Revocation Period, the Agreement will become fully effective upon expiration of the Revocation Period

h  It is understood and agreed that the above-recited consideration is given by the Company and accepted by Employee in settlement and compromise of any actual or potential disputes involving the Company or its predecessors, the validity of which is expressly denied by the Company  In addition, the Parties agree and acknowledge that payment of such consideration under this Agreement shall never be construed as an admission of any liability, wrongdoing or responsibility on the Company's part

i  Employee forever agrees not to disclose, in any manner, the existence, terms or conditions of this Agreement, whether fact or amount, to any person or entity under any circumstances, except to the limited extent, if any, required by applicable law after prior written notice to the Company and cooperation with the Company as to the nature and extent of any such disclosure, consistent with applicable law  Employee further agrees to abide by any confidentiality and non-solicitation agreement(s) or other employment-related agreements, which he/she may have signed during the course of his/her employment

j  Employee affirms that the sole inducement for signing this Agreement is as stated herein, and that no other promise or agreement of any kind has been made by any person or entity whatsoever to cause Employee to sign this Agreement  This Agreement constitutes the complete agreement between, and contains all of the promises and undertakings of, the Parties with respect to the subject matter hereof  Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein  This Agreement may not be revised or modified without the mutual written consent of the Parties

k  If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective or modified by such court to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement

l  This Agreement shall, in all respects, be interpreted, enforced, and governed under the laws of the State of Delaware, without regard to its conflict-of-law provisions

m  Employee hereby acknowledges and agrees that he/she has had sufficient time to consider this Agreement and consult with counsel of his/her own choosing at his/her own expense  Employee fully understands the meaning and intent of this Agreement and voluntarily executes this Agreement without duress

Company Representative                                    Employee

_____    02/01/2006        _____  2/10/06

Robert A Toohey                 (Date)        Ivy G Bailey                 (Date)
Senior Vice President, Human Resources        Employee ID  02812253   Unique Signing Code   14662

RECEIVED FEB 1 4 2006

# EXHIBIT 2

EEOC FORM 131 (5/01)

## U.S. Equal Employment Opportunity Commission

|  |  |
|---|---|
| ⌐ Ora Darby<br>Senior Staff Consultant<br>MCI, INC.<br>13100 Columbia Pike<br>FL B31<br>Silver Spring, MD 20904 ⌐ | PERSON FILING CHARGE<br><br>**Ivy G. Bailey**<br><br>THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s)<br><br>EEOC CHARGE NO.<br>**570-2006-00938** |

## NOTICE OF CHARGE OF DISCRIMINATION
### (See the enclosed for additional information)

This is notice that a charge of employment discrimination has been filed against your organization under:

[ ] Title VII of the Civil Rights Act        [ ] The Americans with Disabilities Act

[X] The Age Discrimination in Employment Act    [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge.

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by _____ a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to _____ .
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| Tram H. Ngo,<br>Acting CRTIU Supervisor<br><br>*EEOC Representative*<br><br>Telephone    **(202) 419-0728** | **Washington Field Office - 570**<br>**1801 L Street, N.W.**<br>**Suite 100**<br>**Washington, DC 20507** |
|---|---|

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [X] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER

**See enclosed copy of amended charge of discrimination.**

| Date<br><br>January  22, 2007 | Name / Title of Authorized Official<br><br>Dana Hutter,<br>Director | Signature<br><br>*Dana R Hutter* |
|---|---|---|

JUN-06-2007 14:04 From:VC34W460-MMULTI    9086302638    To:Verizon Linkline    P.2/2

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | **First Amended Charge** |
| ☒ EEOC | 570-2006-00938 |

FIELD OFFICE

**D.C. Office Of Human Rights** _____ and EEOC

_State or local Agency, if any_

| Name (indicate Mr, Ms, Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ivy G. Bailey** | **(301) 749-8283** | **09-30-1950** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1630 Tucker Road** | **Fort Washington, MD 20744** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **MCI, INC.** | **500 or More** | **(202) 736-6395** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1133 19th Street, N.W.** | **Washington, DC 20036** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **02-01-2006** | **02-01-2006** |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the above named Respondent on November 13, 2000, and held the position of Executive Administrative Assistant in the Employment Law Section. In November 2005, I sent a letter to Respondent's Executive Vice President Nancy Higgins in the Ethics department complaining of a hostile work environment that had been created. I met with Vice President of Employment Law, twice, nothing was resolved. On February 1, 2006, I was informed that I was terminated and requested to sign a severance plan. On or about February 10, 2006, I accepted Respondent's severance plan.

I believe that I was discriminated against because of my age, 55 years, and subjected to retaliation, in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

| 12/18/06 | _Ivy G. Bailey_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 12/18/06 |
|---|---|---|
| Date | Charging Party Signature | |

# EXHIBIT 3

Jun-08-2007  01:21pm  From-U.S. EEOC, WFO                    +2024190740              T-690  P.002/002  F-563

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To | Ivy G. Bailey<br>1630 Tucker Road<br>Fort Washington, MD 20744 | From: | Washington Field Office - 570<br>1801 L Street, N.W.<br>Suite 100<br>Washington, DC 20507 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | Telephone No |
|---|---|---|
| 570-2006-00938 | Janet Stump,<br>Enforcement Supervisor | (202) 419-0713 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so

[ ]  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____          **FEB 2 3 2007**

Enclosures(s)                  Dana Hutter,
                               Director                  (Date Mailed)

cc    Diann James
      Senior Staff Consultant
      VERIZON
      13100 Columbia Pike
      Room B31
      Silver Spring, MD 20904

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
IVY BAILEY,                            )
                                       )
            Plaintiff,                 )      Civil Action No. 07-1494 (ESH)
                                       )
v.                                     )
                                       )
VERIZON COMMUNICATIONS INC.,           )
                                       )
            Defendant.                 )
_____)

## PROPOSED ORDER GRANTING DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

Having considered Defendant's Motion to Dismiss the Complaint, and all materials and

arguments submitted in support thereof and in opposition thereto, it is hereby

**ORDERED** that Defendant's Motion to Dismiss the Complaint is **GRANTED.**  It is

further

**ORDERED** that Plaintiff's Complaint is hereby dismissed with prejudice.

**SO ORDERED** on this _____ day of _____, 2007.


                              _____
                              Ellen Segal Huvelle
                              United States District Judge